UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARYANNE BONSTEIN,<br><br> Plaintiff,<br><br>  v.<br><br>STATE OF MAINE DEPARTMENT OF TRANSPORTATION<br><br> Defendant. | Civil Action No. |

**COMPLAINT**
**AND DEMAND FOR JURY TRIAL**
**INJUNCTIVE RELIEF SOUGHT**

Plaintiff Maryanne Bonstein by and through undersigned counsel complains against the defendant as follows:

**Introduction**

1. This case arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Maine Human Rights Act ("MHRA"), 5 M.R.S.A. § 4551 et seq. and the Maine Whistleblowers' Protection Act ("MWPA"), 26 M.R.S.A. § 831 et seq..

2. Defendant discriminated against Ms. Bonstein because of her gender, subjected her to a hostile work environment, and retaliated against her because she complained about sex discrimination and hostile treatment by terminating her employment.

**Parties**

3. Ms. Bonstein is a resident of Alexander, Washington County, Maine.

4. Defendant State of Maine Department of Transportation, (hereafter "Maine DOT"), is an agency of the State of Maine, with a central office in Augusta, Kennebec County, Maine.

5. For the calendar years 2015 and 2016, Maine DOT employed 15 or more employees in each

of 20 or more calendar weeks.

6. At all material times, defendant Maine DOT employed Ms. Bonstein within the meaning of Title VII, the MHRA and the MWPA.

## Jurisdiction

7. Jurisdiction is present pursuant to 28 U.S.C. §§ 1331 and 1367.

8. On December 1, 2016, Ms. Bonstein filed a Charge of Discrimination with the Maine Human Rights Commission (MHRC) and Equal Employment Opportunity Commission (EEOC).

9. On September 11, 2018, the MHRC issued notice of right to sue to Ms. Bonstein.

10. On November 5, 2018, the EEOC issued notice of dismissal and notice of right to sue to Ms. Bonstein.

11. Ms. Bonstein has exhausted all administrative remedies for her claims under Title VII, the MHRA and the MWPA.

## Jury Trial Demand

12. Pursuant to Federal Rule of Civil Procedure 38(b), Ms. Bonstein hereby demands a trial by jury on all issues triable of right by jury.

## Factual Allegations

13. Ms. Bonstein is a female, who in 2015 completed truck driving school and obtained her Class A Commercial Driver License.

14. Ms. Bonstein was hired by Maine DOT as a Transportation Worker I on December 21, 2015, and assigned to work at the Maine DOT Region 4 lot in Baileyville, Washington County, Maine, (hereafter the "Baileyville lot").

15. On December 21, 2015, Ms. Bonstein reported for work at the Baileyville lot, where DOT

manager Mark Theriault said he had no idea she was coming to work, and directed her to complete paperwork in the break room for the duration of the day.

16. On or about December 22, 2015, Ms. Bonstein met with Maine DOT managers who gave her two policy booklets and at least 10 memos, told her that it was a lot of information, to read it when she had time, and that the information all would be covered in her new employee training.

17. Maine DOT did not provide Ms. Bonstein with her new employee training until February 16, 2016.

18. Ms. Bonstein was assigned to work under the immediate supervision of crewleader Dave Gardner.

19. Ms. Bonstein was the only female employee working at the Baileyville lot.

20. From the outset of her employment, Ms. Bonstein did whatever work was assigned to her, including road repair, road sweeping, chipping brush, loading trucks, painting, cleaning the garage and trucks, cleaning road drains of ice and droving trucks plowing snow.

21. From the outset of her employment, it was common for work orders to be delivered to Ms. Bonstein by co-workers, rather than communicated by a supervisor directly.

22. From the outset of her employment, Mark Theriault kept track of the hours Ms. Bonstein and other employees worked, and filled out time sheets which he provided to her, as well as others, to sign.

23. On or about January 8, 2016, Maine DOT provided Ms. Bonstein with additional DOT policy memoranda and an Assignee/Operator Agreement.

24. As of January 8, 2016, Ms. Bonstein was aware that Maine DOT had a policy barring an employee using DOT equipment for personal use, and was aware that Maine DOT had

exceptions to that policy for some instances of work-related transportation.

25. In early January 2016, Ms. Bonstein was informed by a co-worker that Dave Gardner had stated to the crew that "she had no business working there" and that "women should not be doing this job."

26. At a later date, a co-worker told Ms. Bonstein that Gardner again said "a woman like her does not belong here."

27. Ms. Bonstein was distressed by Gardner's reported comments and her prospects with Maine DOT.

28. Maine DOT did not provide a women's bathroom at the Baileyville lot, so instead Ms. Bonstein had to use the men's bathroom, with a door which men sometimes did not lock, resulted in privacy problems and embarrassment for Ms. Bonstein.

29. Maine DOT provided no bathrooms in the field, so Ms. Bonstein had to ask permission to take the truck to find a bathroom.

30. When Ms. Bonstein asked to take the truck, Crewleader Dave Gardner questioned her in front of the male crew as to whether she needed to go to the bathroom, causing her embarrassment and humiliation.

31. On February 5, 2016, Ms. Bonstein's co-worker, Roger Socabasin, told her that he was having an anxiety attack, that he had called the supervisor who said she could give him a ride home.

32. Ms. Bonstein believed that her supervisors had approved her driving Roger Socabasin home as part of her work duties.

33. Roger Socabasin cleaned the snow off a Maine DOT truck, and Ms. Bonstein drove him in that truck to his home in Princeton, then returned to the Baileyville lot and resumed shoveling snow.

34. At around 10:30 pm, Crewleader Gardner drove into the lot and screamed at Ms. Bonstein,

cursing: "Hey! Can you move that **** truck for *** sake? "Ms. Bonstein asked where, and Gardner yelled back at her: "Over where I **** plowed!"

35. Ms. Bonstein called her supervisor, Mark Theriault, told him that Gardner had screamed at her, and asked to leave because she felt very uncomfortable being alone at work with him.

36. Mr. Theriault gave Ms. Bonstein permission to leave work.

37. As Ms. Bonstein was leaving the building, Mr. Gardner came in and asked where she was going. She responded that she going home with permission from Mr. Theriault.

38. Mr. Gardner followed Ms. Bonstein, asking why. She told him that what he said and how he said it intimidated her and that he had no right to speak to her that way. Mr. Gardner denied making those statements.

39. Ms. Bonstein walked out of the building and got in her car. Mr. Gardner followed her out the door, got in the plow truck, and drove it straight at her car, pushing nearly two foot snow bank in front of her car and blocking her from leaving the lot.

40. Ms. Bonstein was petrified with fear, and believed that Mr. Gardner was threatening to harm her physically.

41. In her panic, Ms. Bonstein called Mr. Theriault on her cell phone, and told him what Gardner had done.

42. After rocking her car back and forth in the snow, Ms. Bonstein was able to drive out over the snow bank.

43. Ms. Bonstein went home and cried, feeling distressed, disrespected, anxious for her job, and fearful of returning to work.

44. Over the course of the next day, Ms. Bonstein decided to report Mr. Gardner's verbally abusive and physically threatening conduct toward her to Maine DOT.

45. On Monday, February 8, 2016, Ms. Bonstein asked Mr. Theriault to whom she should speak about her complaints about Mr. Gardner.

46. He told her to call Valarie Moody in Maine DOT Human Resources, which she did.

47. Within 15 minutes, Mr. Theriault and Mr. Gardner called Ms. Bonstein back to the office and asked her about giving Roger Socabasin a ride home on the prior workday, February 5.

48. Ms. Bonstein responded that Roger Socabasin told her that the supervisor had said she could take him home.

49. Mr. Theriault said, no, that she did not have permission. Ms. Bonstein asked if she was going to be written up, to which he responded, "No, just don't let it happen again."

50. On February 8, 2016, Ms. Bonstein made a formal complaint to Maine DOT, Human Resources staff, Valarie Moody, about Mr. Gardner's hostile and threatening actions toward her, and provided Mr. Theriault a written statement of Mr. Gardner's actions.

51. Maine DOT's Human Resources office began an investigation into Ms. Bonstein's complaint in February 2016, and communicated with Ms. Bonstein over the course of February and March about her complaint.

52. After Ms. Bonstein complained to Maine DOT, Mr. Gardner subjected her to ongoing hostile mistreatment. Hostilities included that he referred repeatedly to Ms. Bonstein to her face as "her," saying "take her with you" as her work assignment; he did not give her work orders directly, but instead communicated work orders to her co-workers to relay to her; he repeatedly did not answer her questions, and ignored her or stared at her in silence; he assigned her to do work that she was not trained to do, and he assigned her to work alone at the Baileyville lot, cleaning, rather than participating in the work of the crew in the field.

53. Ms. Bonstein's co-workers informed her that Mr. Gardner made hostile, degrading comments

about her to the crew, including "a woman like her does not belong here."

54. On multiple occasions over several weeks, Ms. Bonstein reported Mr. Gardner's hostile treatment to Valarie Moody, and stated she believed it was retaliation for her complaints about him.

55. Ms. Moody responded that Ms. Bonstein should write everything down.

56. On or about March 29, 2016, Ms. Bonstein received a positive evaluation indicating that she was meeting all standards, except interpersonal relations, and needed to take corrective action for demonstrating a lack of respect for her team crewleader, Mr. Gardner, and to cease directing questions to Mr. Theriault, outside of the chain of command.

57. Ms. Bonstein objected to the criticism as to lack of respect for Mr. Gardner, explained that he was starring her down or ignoring her, and leaving her with no choice but to direct questions to Mr. Theriault.

58. Ms. Bonstein agreed to meet with Maine DOT managers, Mr. Theriault and Joe Lacerda, along with Mr. Gardner, however, the next day Mr. Theriault informed her that there would be no meeting, and they were to wait until Maine DOT Human Resource office's investigation of her complaint was over.

59. On April 4, 2016, Maine DOT issued a letter notifying Ms. Bonstein that it was investigating her for claimed improper conduct on February 5, 2016 of leaving state premises without permission, using a state vehicle to take another employee home without permission, and claiming work time when transporting another worker home.

60. Ms. Bonstein objected that she had already been disciplined with an oral warning on February 8, 2016, and asked Mr. Theriault to provide a note to that effect.

61. Mr. Theriault stated he would provide Ms. Bonstein a note describing the oral warning, then

later declined, stating that Valarie Moody had told him to wait until the investigation was complete.

62. On April 14, 2016, Maine DOT Human Resources staff, Valarie Moody and Christy Cross interviewed Ms. Bonstein on its investigation of her actions on February 5, 2016.

63. Ms. Bonstein explained that she believed a supervisor had authorized her to drive Roger Socabasin home, that it was common practice for co-workers to relay supervisors' directions, that she did not believe that doing so violated Maine DOT policy, that she had not had a training on that policy yet, and that Mr. Theriault had recorded that time as hours worked, fully aware that she had driven a sick co-worker home, and she believed that time was authorized by him.

64. On April 25, 2016, Mr. Theriault brought Ms. Bonstein a written disciplinary notice for an oral warning claiming that on April 1, 2016, she had used half an hour of unpaid sick time, which she had not yet earned.

65. Ms. Bonstein objected because on April 1, 2016, she had offered to come to work for the half hour, and Mr. Theriault, saying she was too sick, had excused her from coming in to work.

66. On May 9, 2016, Maine DOT managers Steve Thebarge and Valarie Moody came to the Baileyville lot and informed Ms. Bonstein that they were terminating her employment, on the claimed grounds that on February 5, 2016, she left state premises during work time without permission, used a state vehicle to take another employee home without permission, and claimed work time when she took another employee home.

67. Maine DOT's claimed grounds for terminating Ms. Bonstein's employment are false and pretextual.

68. Maine DOT discriminated against Ms. Bonstein on the basis of sex in the terms and

conditions of her employment by subjecting her to the discriminatory comments and treatment of defendant's supervisor, Mr. Gardner.

69. Maine DOT discriminated against Ms. Bonstein on the basis of sex in the terms and conditions of her employment by subjecting her to a hostile work environment.

70. Maine DOT failed to take adequate corrective action with respect to Ms. Bonstein's objections to and reports of discriminatory treatment, a hostile work environment and threatening, abusive conduct by defendant's supervisor, Mr. Gardner.

71. Maine DOT discriminated against Ms. Bonstein by terminating her employment in retaliation for her complaints about and opposition to discriminatory treatment, workplace violence and a hostile work environment.

72. Maine DOT discriminated against Ms. Bonstein by subjecting her to a hostile work environment and discriminatory treatment in retaliation for her complaints about Mr. Gardner's threatening and hostile treatment of her.

73. As a result of Maine DOT's unlawful discrimination against Ms. Bonstein, she has suffered damages including but not limited to fear, anxiety, distress, depression, humiliation, intimidation, loss of enjoyment of life, lost wages, lost benefits, injury to reputation, injury to career, and other pecuniary and non-pecuniary losses.

74. Ms. Bonstein has no plain, adequate, or complete remedy at law to fully redress the wrongs alleged, and will continue to suffer irreparable injury unless defendant is enjoined by this Court.

### Count I - Title VII of the Civil Rights Act of 1964, Discriminatory Treatment

75. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if set forth fully herein.

76. Maine DOT violated Title VII when it discriminated against Ms. Bonstein by subjecting her to discriminatory treatment by her supervisors in her terms and conditions of employment because of her sex.

77. Maine DOT violated Title VII when it discriminated against Ms. Bonstein by imposing unwarranted discipline on her, and by terminating her employment because of her sex.

78. Maine DOT subjected Ms. Bonstein to disparate treatment in the application of its disciplinary standards on the basis of her sex as compared to male employees.

79. Maine DOT intentionally violated Ms. Bonstein's rights under Title VII.

80. As a direct and proximate result of Maine DOT's violations of Title VII, Ms. Bonstein incurred damages.

### Count II - Title VII of the Civil Rights Act of 1964, Hostile Work Environment

81. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if set forth fully herein.

82. Maine DOT violated Title VII when it subjected Ms. Bonstein to a hostile work environment and harassment because of her sex.

83. The repeated comments of Maine DOT's supervisor, Mr. Gardner, regarding Ms. Bonstein, alleged above, including that "she had no business working there" and that "women should not

be doing this job" were hostile, insulting, humiliating and abusive, and created a work environment that was marked by severe or pervasive discrimination against Ms. Bonstein because of her sex.

84. The exclusionary treatment by Maine DOT's supervisor, Mr. Gardner, of Ms. Bonstein, alleged above, including refusing to communicate with her, and referring to her as "her" in her presence, created a work environment that was marked by humiliation, ridicule and insult, and constituted severe or pervasive discrimination against Ms. Bonstein because of her sex.

85. The actions of Maine DOT's supervisor, Mr. Gardner, toward Ms. Bonstein of plowing snow toward her while she was in her vehicle, and blocking her and her vehicle, preventing her from leaving the Baileyville lot, as alleged above, was hostile, intimidating, physically threatening, abusive and created a work environment that was marked by severe discrimination against Ms. Bonstein because of her sex.

86. Mr. Gardner's hostile comments and actions toward Ms. Bonstein were offensive to her because of her status as female.

87. Mr. Gardner's hostile treatment of Ms. Bonstein materially altered the conditions of her employment, including because it interfered with her carrying out her work responsibilities, prevented her from learning how to perform her job, and harmed her psychological well-being.

88. By subjecting Ms. Bonstein to a hostile work environment, Maine DOT intentionally violated Ms. Bonstein's rights under Title VII.

89. As a direct and proximate result of Maine DOT's violations of Title VII, Ms. Bonstein incurred damages.

### Count III - Title VII of the Civil Rights Act of 1964, Retaliation

90. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if set forth fully herein.

91. Maine DOT violated Title VII when it retaliated against Ms. Bonstein by unwarranted discipline and by termination of her employment because she complained about and opposed discriminatory treatment on the basis of her sex by her supervisor, Mr. Gardner.

92. Maine DOT violated Title VII when it retaliated against Ms. Bonstein by unwarranted discipline and termination of her employment because she complained about and opposed a hostile work environment, and abusive treatment on the basis of her sex by her supervisor.

93. Maine DOT violated Title VII when it retaliated against Ms. Bonstein by unwarranted discipline and termination of her employment because she complained about and opposed retaliatory treatment by her supervisor.

94. Ms. Bonstein had a reasonable belief that her supervisor's discriminatory and retaliatory treatment of her violated her rights.

95. By its retaliatory actions, Maine DOT intentionally violated Ms. Bonstein's rights under Title VII.

96. As a direct and proximate result of Maine DOT's retaliatory actions in violation of Title VII, Ms. Bonstein incurred damages.

### Count IV - Maine Human Rights Act Discriminatory Treatment

97. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if set forth fully herein.

98. Maine DOT violated the MHRA when it discriminated against Ms. Bonstein by subjecting her to discriminatory treatment by her supervisors in her terms and conditions of employment because of her sex.

99. Maine DOT violated the MHRA when it discriminated against Ms. Bonstein by imposing unwarranted discipline on her, and by terminating her employment because of her sex.

100. Maine DOT subjected Ms. Bonstein to disparate treatment in the application of its disciplinary standards on the basis of her sex as compared to male employees.

101. Maine DOT intentionally violated Ms. Bonstein's rights under the MHRA.

102. As a direct and proximate result of Maine DOT's violations of the MHRA, Ms. Bonstein incurred damages.

### Count V – The Maine Human Rights Act, Hostile Work Environment

103. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if set forth fully herein.

104. Maine DOT violated the MHRA when it subjected Ms. Bonstein to a hostile work environment and harassment because of her sex.

105. The repeated comments of Maine DOT's supervisor, Mr. Gardner, regarding Ms. Bonstein, alleged above, including that "she had no business working there" and that "women should not be doing this job" were hostile, insulting, humiliating and abusive, and created a work environment that was marked by severe or pervasive discrimination against Ms. Bonstein because of her sex.

106. The exclusionary treatment by Maine DOT's supervisor, Mr. Gardner, of Ms. Bonstein,

alleged above, including refusing to communicate with her, and referring to her as "her" in her presence, created a work environment that was marked by humiliation, ridicule and insult, and constituted severe or pervasive discrimination against Ms. Bonstein because of her sex.

107. The actions of Maine DOT's supervisor, Mr. Gardner, toward Ms. Bonstein of plowing snow toward her while she was in her vehicle, and blocking her and her vehicle, preventing her from leaving the Baileyville lot, as alleged above, was hostile, intimidating, physically threatening, abusive and created a work environment that was marked by severe discrimination against Ms. Bonstein because of her sex.

108. Mr. Gardner's hostile comments and actions toward Ms. Bonstein were offensive to her because of her status as female.

109. Mr. Gardner's hostile treatment of Ms. Bonstein materially altered the conditions of her employment, including because it interfered with her carrying out her work responsibilities, prevented her from learning how to perform her job, and harmed her psychological well-being.

110. By subjecting Ms. Bonstein to a hostile work environment, Maine DOT intentionally violated Ms. Bonstein's rights under the MHRA.

111. As a direct and proximate result of Maine DOT's violations of the MHRA, Ms. Bonstein incurred damages.

### Count VI – The Maine Human Rights Act
### Retaliation

112. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if set forth fully herein.

113. Maine DOT violated the MHRA when it retaliated against Ms. Bonstein by unwarranted discipline and by termination of her employment because she complained about and opposed discriminatory treatment on the basis of her sex by her supervisor, Mr. Gardner.

114. Maine DOT violated the MHRA when it retaliated against Ms. Bonstein by unwarranted discipline and termination of her employment because she complained about and opposed a hostile work environment, and abusive treatment on the basis of her sex by her supervisor.

115. Maine DOT violated the MHRA when it retaliated against Ms. Bonstein by unwarranted discipline and termination of her employment because she complained about and opposed retaliatory treatment by her supervisor.

116. Ms. Bonstein had a reasonable belief that her supervisor's discriminatory and retaliatory treatment of her violated her rights.

117. By its retaliatory actions, Maine DOT intentionally violated Ms. Bonstein's rights under the MHRA.

118. As a direct and proximate result of Maine DOT's retaliatory actions in violation of the MHRA, Ms. Bonstein incurred damages.

### Count VII – Maine Whistleblowers' Protection Act

119. Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if set forth fully herein.

120. Maine DOT violated the Maine Whistleblowers' Protection Act, (MWPA), when it retaliated against Ms. Bonstein with disciplinary actions and termination of her employment because she reported discriminatory treatment, a hostile work environment and harassment and the physically threatening assault by her supervisor, Mr. Gardner.

121. Ms. Bonstein had reasonable cause to believe that her supervisor's discriminatory and

hostile treatment of her, which she reported, was illegal under law and violated her rights to be free of discrimination in employment.

122. Ms. Bonstein had reasonable cause to believe that her supervisor's plowing snow to physically block her in her car from leaving the Baileyville lot, which she reported, was illegal and conduct that put her health and safety at risk.

123. Maine DOT imposed discipline and then terminated Ms. Bonstein's employment because she reported illegal and unsafe conduct to it.

124. By its retaliatory actions, Maine DOT intentionally violated Ms. Bonstein's rights under the MWPA.

125. As a direct and proximate result of Maine DOT's retaliatory actions in violation of the MWPA, Ms. Bonstein incurred damages.

**Prayer for Relief**

Plaintiff Bonstein respectfully requests that the Court grant the following relief:

A. Enter Judgment in plaintiff's favor;

B. Declare the conduct engaged in by defendant to be in violation of plaintiff's rights under Title VII, the MHRA and the MWPA;

C. Enjoin defendant Maine DOT, its agents, employees, and those acting in concert with them from continuing to violate plaintiff's rights;

D. Order defendant to reinstate plaintiff or award front pay to plaintiff;

E. Award equitable relief for back pay and benefits;

F. Award compensatory damages under Title VII, the MHRA and the MWPA in an amount to be determined at trial;

G. Award nominal damages;

H. Award attorney's fees, including legal expenses, and costs;

I. Award prejudgment interest;

J. Permanently enjoin defendant from engaging in any employment practices which discriminate on the basis of sex or retaliate for opposition to discrimination;

K. Require defendant to mail a letter to all employees notifying them of the verdict against them and stating that defendant will not tolerate discrimination in the future;

L. Require that defendant post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

M. Require that defendant train all management level employees on the protections afforded by Title VII, the MHRA and the MWPA;

N. Require that defendant place a document in plaintiff's personnel file which explains that defendant discriminated against plaintiff and unlawfully terminated her employment because of sex discrimination and in retaliation; and

O. Grant to plaintiff such other and further relief as may be just and proper.


DATE: December 10, 2018				*/s/ Lisa J. Butler*_____
						Lisa J. Butler, Esq.
						Maine Employee Rights Group, P.A.
						23 Water Street, Suite 207
						Bangor, Maine 04401
						lbutler@maineemployeerights.com
						Telephone: (207)217-6573

						Attorney for the Plaintiff